IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| LARRY NEEL, | ) |
| | ) |
| Plaintiff, | ) Civil Case No. 07-530-KI |
| | ) |
| vs. | ) OPINION AND ORDER |
| | ) |
| OFFICER ABRAHAMSON, individually and as a Police Officer, OFFICER RESCH, individually and as a Police Officer, OFFICER LEO BESNER, individually and as a Police Officer, CITY OF PORTLAND, a municipal corporation, MULTNOMAH COUNTY, a public entity, | ) |
| Defendants. | ) |

Kelly M. Doyle
Doyle Law PC
8430 SW 22nd Avenue
Portland, Oregon 97219

    Attorney for Plaintiff

Page 1 - OPINION AND ORDER

James G. Rice
Deputy City Attorney
Office of City Attorney
1221 SW Fourth Avenue, Room 430
Portland, Oregon  97204

    Attorney for Defendants

KING, Judge:

Plaintiff Larry Neel alleges several constitutional claims against the individual police officers and the City of Portland which arise from the officers' warrantless entry of Neel's trailer and the ensuing struggle.[1]  Before the court is Defendants Officer Abrahamson, Officer Resch, Officer Besner and City of Portland's Motion for Summary Judgment (#29).  For the reasons below, I grant the motion in part and dismiss all claims alleged against the City.

## FACTS

At 8:45 AM on March 8, 2005, Portland Police Bureau Officers Susan Abrahamson and Jami Resch responded to a report of suspicious people near Christiansen Electric in Northwest Portland.  On arrival, several employees reported that the two trailers across the railroad tracks had a lot of foot traffic.  Transients had been seen in the company parking lot looking into cars and crouching down between them while holding screwdrivers.

The officers drove to the two trailers which were placed end-to-end with a tarp strung on the north side.  Neither officer could see any activity on the other side of the tarp.  The officers spoke to Stacy Hollis and George Rutherford after they came out from behind the tarp.  The two told the officers that they came to see their friend Larry (Neel).  Rutherford said he did not know

---

[1] Neel also alleges a claim against Multnomah County arising from his incarceration but the County has not filed a motion for summary judgment.

Page 2 - OPINION AND ORDER

if Larry was home. Hollis then said they had just spoken to Larry in his trailer but she did not know if he was still there. The conflicting stories made Abrahamson suspicious that Larry might have been victimized in some way.

Officers Besner and Grable arrived as backup. On approaching the trailers, Abrahamson noticed that the space immediately outside both was covered with garbage, shopping carts, rotten food, and several pieces of lumber. Abrahamson knocked on the door of the first trailer with her baton. Ryan Herbert came to the door and was escorted by Resch to wait with Harris and Rutherford. Abrahamson noticed that this trailer was knee high with garbage and debris, including a hot-to-the-touch halogen work light that had heated a couch's surface to the point that Abrahamson was concerned the couch might catch fire. Neel was not in the first trailer.

According to defendants, Abrahamson knocked on the door of the second trailer with her baton. A voice responded, "Open the door." Resch identified them as Portland Police and told the person to open the door. The voice responded again, "Open the door." Abrahamson used her baton to push open the door, which was ajar.

Resch and Abrahamson saw Neel, who had rats crawling on him and around him on the bed that was six to eight feet from the door. The officers told Neel to come outside and speak to them. Neel picked up a syringe lying next to him and threw it at the officers. Abrahamson and Resch then entered the trailer and each grabbed one of Neel's arms to escort him outside. Garbage and rotten food covered the floor of the trailer, making it difficult to walk. As they escorted Neel out, he began flailing his body back and forth in an attempt to get away. Besner joined them outside the trailer. They led Neel to the area where Grable was watching Hollis, Rutherford, and Herbert.

Page 3 - OPINION AND ORDER

Abrahamson asked Neel if he had any other needles. She believed she had to pat Neel down to ensure officer safety. While Abrahamson had Neel's hands on top of his head, he continued to jerk and squirm and complain that Abrahamson was hurting him. Abrahamson told Neel to keep his hands on his head and bent over to pat down Neel's lower body. He began to shuffle his feet. Besner came over and pinned Neel's foot to the ground with his boot. Neel continued to twist and then sat straight down, causing Abrahamson to lose control of his hands.

Once on the ground, Neel kicked Besner twice in the shin. Besner struck Neel's leg once with the baton. When Neel began to kick Besner again, Besner used a taser to halt Neel so they could handcuff him. Once Neel was subdued, Abrahamson and Besner went back in the trailer to retrieve the syringe.

Neel remembers the altercation differently. According to Neel, he was in his rented trailer with his pet rats and with the trailer door closed but unlocked. Resch and Abrahamson disregarded the "No Trespassing" signs on the tarp, lifted it up, and came to his door. Abrahamson knocked on the door. Neel said through the closed door that he was tired and told the officers to go away. Abrahamson knocked several times and then opened the door and entered the trailer. Neel dropped the syringe from the couch to the trailer floor. Abrahamson and Resch grabbed Neel's arms and dragged him outside. Neel, who is 59 years old, has severe arthritis which caused him to jerk in pain while being dragged. He begged the officers to go easy on him. Abrahamson began to search Neel, twisted his hands on top of his head, cuffed him, and told him to lie on the ground. Neel was in pain. Besner stomped on Neel's left ankle and ground it into the gravel. Neel tried to kick Besner off his ankle. Besner hit Neel with the baton on his ankle, causing a lump the size of a robin's egg. Besner then tasered Neel for fifteen seconds,

Page 4 - OPINION AND ORDER

causing Neel to lose control of his bowels. Neel rolled over on his stomach and Besner ground his face into the gravel, causing a patch of skin to be torn off Neel's cheek. Paramedics removed the taser probes with pliers and told Neel that he should receive further treatment. Prior to providing Neel with clean clothes, Besner and Grable taunted him and showed no understanding for his pain and injuries.

On analysis, the syringe contained methamphetamine residue. Neel was charged with Attempted Possession of a Controlled Substance, Resisting Arrest, Recklessly Endangering Another Person, and Attempted Assault of a Public Safety Officer. The Honorable Nely Johnson, Multnomah County Circuit Court Judge, found the search to be illegal and suppressed the syringe. The prosecutor dropped all charges except resisting arrest, to which Neel pled no contest.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

# DISCUSSION

I.    <u>Excessive Force</u>

Neel alleges a claim against Besner and the City for excessive force in violation of the Fourth Amendment.

Defendants contend that <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994), bars Neel's excessive force claim because his conviction for Resisting Arrest would be rendered invalid if he prevails on the claim. Defendants argue that Neel's no contest plea waived any defense, including self-defense, to the Resisting Arrest charge. According to defendants, all of the force by the officers occurred prior to Neel's arrest, when he was trying to kick Besner. Defendants interpret the transcript of Neel's plea hearing to mean that his conduct in throwing the syringe was distinct from his conduct that formed the basis for his Resisting Arrest charge–ignoring verbal commands and kicking.

Neel argues that his excessive force does not undermine his Resisting Arrest conviction because the factual basis for the conviction is in dispute. Neel disagrees with defendants' interpretation of his plea colloquy. He claims that it is not possible to determine whether the excessive force claim is based on officer conduct before or after his arrest because the point of arrest is a disputed fact.

Defendants rely on the rule stated in <u>Heck v. Humphrey</u>, 512 U.S. 477, 114 S. Ct. 2364 (1994). To recover damages for an allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such

determination, or called into question by a federal court's issuance of a writ of habeas corpus. If a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence, the court must dismiss the complaint. Id. at 486-87.

This rule has been applied in excessive force cases. In Hudson v. Hughes, 98 F.3d 868 (5th Cir. 1996), the plaintiff alleged that excessive force was used when he was brutally beaten during his arrest on a burglary complaint. The plaintiff was convicted of battery of a police officer. The court held that Heck precluded the plaintiff's excessive force § 1983 claim. It reasoned that if the excessive force claim was proven, it would imply the invalidity of the conviction for battery of an officer, for which self-defense was a justification defense under state law. "This is true because the question whether the police applied reasonable force in arresting him depends in part on the degree of his resistance, which in turn will place in issue whether his resistance (the basis of his conviction for assaulting a police officer) was justified, which, if it were, necessarily undermines that conviction." Id. at 873.

The plaintiff fared better in Smithart v. Towery, 79 F.3d 951 (9th Cir. 1996), which held that Heck did not preclude the plaintiff's excessive force claim. Plaintiff entered an *Alford* plea to assault with a deadly weapon, for driving his truck at law enforcement officers who had made a traffic stop of the plaintiff's son. The alleged beating by the officers did not occur until the plaintiff left his truck, after his assault on the officers had ended. Thus, his § 1983 claim did not call into question his conviction.

In Smith v. City of Hemet, 394 F.3d 689 (9th Cir.), cert. denied, 545 U.S. 1128 (2005), the court held that an excessive force claim was barred under Heck by a conviction for resisting arrest if the conviction was based on conduct during the course of the arrest but was not barred if

Page 7 - OPINION AND ORDER

the conviction was based on conduct before or after the arrest. In California, the lawfulness of the officer's conduct is an essential element of the offense of resisting arrest. Moreover, an arrest made with excessive force is unlawful. Id. at 695-96. Thus, a successful excessive force claim "would necessarily mean that the officers had used excessive force to subdue him and were therefore acting unlawfully at the time his arrest was effected." Id. at 697-99.

Under Oregon law, a "person may not lawfully resist arrest, even if the arresting officer lacked the legal authority to make the arrest, provided that the officer was acting under color of official authority." State v. Wright, 310 Or. 430, 433, 799 P.2d 642 (1990). An officer may not use excessive force, however, to accomplish an arrest.

> If a peace officer uses excessive force in making an arrest, the arrestee has a right to use physical force in self-defense against the excessive force being used by the officer. In that circumstance, the arrestee is not "resisting arrest," but, rather, is defending against the excessive force being used by the arresting officer.

Id. at 434-35 (internal citation and footnote omitted).

There are disputed facts here concerning the actions of Neel, Abrahamson, and Besner during the scuffle. Neel argues he was arrested when the officers escorted him out of the trailer. During oral argument, defendants argued that they had probable cause to arrest Neel when escorting him out, but that the arrest did not take place until they handcuffed Neel after the scuffle and tasering. The most difficult issue, however, is making a determination of the factual basis for Neel's no contest plea. The parties provided me with a portion of the transcript of the argument following the suppression hearing before Judge Johnson and the plea colloquy. Because it was transcribed from a recording, the transcript contains many gaps. I agree with defendants that the plea was not based on the "syringe incident" because the syringe was

suppressed. That leaves Neel's alleged conduct of ignoring commands to be still, flailing about, shuffling his feet, freeing his hands, and kicking several times. As I said before, however, the record is not clear on what any of the three people did or when the arrest occurred. Another complication is which conduct Neel considers excessive. He might include the tasering or he might include the hits with the baton or the pinning of his ankle to the ground or the grinding of his face into the gravel.

All in all, there is no way that I could conclude on this record that success on the excessive force claim necessarily implies the invalidity of Neel's conviction. Consequently, I deny the motion for summary judgment based on Heck.

II.     Municipal Liability

Neel alleges all four of his constitutional claims against the City in addition to the individual officers.

The City contends that Neel cannot establish that the alleged constitutional violations were pursuant to a policy, custom, or practice of the City, as required for municipal liability. According to the City, three prior excessive force complaints lodged against Besner do not establish deliberate indifference regarding a failure to discipline. The City argues that the Second Amended Complaint does not aver a formal policy or widespread practice to support the unreasonable search, seizure, and detention claims alleged against it.

Neel argues that the City is liable for the actions of the officers based on the City's failure to discipline errant officers. He claims it is "common knowledge that Portland police used force slightly more frequently than officers in a handful of comparable cities, yet the Police Bureau did not uphold a single citizen complaint between 2004 and 2006." Resp. to Mot. for Summ. J. at

13.  Neel further argues that the City made a deliberate choice to spend "lots of taxpayer dollars" to settle cases against Besner for Fourth Amendment violations and similarly, has not disciplined Abrahamson or Resch for the illegal search and seizure here.  Id.

Neel provides no evidence to support this argument.

A municipality cannot be liable under § 1983 solely based on a respondeat superior theory.  Monell v. Department of Social Services of New York, 436 U.S. 658, 691, 98 S. Ct. 2018 (1978).  In Monell, the Court held that the word "person" in § 1983 includes municipalities and other local governing bodies which may be liable under any of three theories:  (1) if an employee was acting pursuant to an expressly adopted official policy; (2) if an employee was acting pursuant to a longstanding practice or custom; or (3) if an employee was acting as a final policymaker.  Lytle v. Carl, 382 F.3d 978, 982 (9th Cir. 2004).  The municipal

> policy must result from a deliberate choice made by a policy-making official and may be inferred from widespread practices or evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.  A plaintiff cannot prove the existence of a *municipal* policy or custom based solely on the occurrence of a single incident or unconstitutional action by a non-policymaking employee.

Nadell v. Las Vegas Metropolitan Police Dept., 268 F.3d 924, 929 (9th Cir. 2001) (*Monell* claim not proven because there was no evidence that the use of excessive force was a formal policy or widespread practice or that officers committing previous constitutional violations were not discharged or reprimanded) (internal quotations and citations omitted), cert. denied, 535 U.S. 1057 (2002).

Neel alleges that the City is liable for the actions of the three officers because of the failure to discipline the errant officers.  He provides no proof, however, that officers who

committed constitutional violations were not disciplined. Moreover, he does not provide proof of previous constitutional violations. Likewise, there is no proof on whether the City investigated or disciplined the individual officers because of this incident.

Neel has not raised a factual issue that the City has a municipal policy or longstanding practice concerning the alleged constitutional violations. I grant summary judgment dismissing all claims alleged against the City.

III.     Unreasonable Search of the Trailer and Seizure of Neel

Defendants concede that the officers entered Neel's trailer and removed him without a warrant.

Defendants contend that the search of Neel's trailer and the seizure of his person were authorized by the emergency aid exception. Based on the officers' discussion with Neel's friend prior to the officers' arrival at his trailer, the condition of the surrounding area, the door ajar, and Neel's failure to open the door, the officers argue that they believed Neel was hurt or his home was burglarized. Concerning the seizure of Neel, the officers rely on the garbage in his trailer and the rats crawling over him to apply the exception.

Neel first notes that the search was suppressed in state court. He argues that if the officers were truly concerned that the people they spoke to had hurt him, the officers would have interviewed the people more fully. He claims that the officers' reports do not show that they believed an emergency existed at the time. Neel notes that the officers were called to investigate a report by a nearby business that transients were living in the trailers and dealing drugs. According to Neel, the officers were searching to gather evidence and arrest the occupant of the trailer.

Page 11 - OPINION AND ORDER

"It is a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable.  Nevertheless, because the ultimate touchstone of the Fourth Amendment is reasonableness, the warrant requirement is subject to certain exceptions[,]" including the emergency aid exception.  Brigham City, Utah v. Stuart, 547 U.S. 398, 126 S. Ct. 1943, 1947 (2006) (internal quotations and citations omitted).

Under emergency situations, a police officer may make a warrantless entry into a home "as part of their community caretaking function."  Martin v. City of Oceanside, 360 F.3d 1078, 1082 (9th Cir.) (internal quotation omitted), cert. denied, 543 U.S. 817 (2004).  "The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property. . . . There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched."  Id. at 1081-82.  The United States Supreme Court recently held that the officer's subjective motivation is irrelevant as long as the circumstances objectively justify the entry.  Brigham City, 126 S. Ct. at 1948.  "It therefore does not matter . . . whether the officers entered the kitchen to arrest respondents and gather evidence against them or to assist the injured and prevent further violence."  Id.

Brigham City rejected Neel's argument that the officers only entered his trailer to gather evidence.  The issue is whether an emergency existed, viewed objectively from what the officers knew at the time.  It is also irrelevant that the syringe was suppressed in state court.  When the officers entered the trailer, they did not know about the syringe or its later suppression.

Prior to entering the trailer, the officers saw a lot of garbage and junk outside the trailer and spoke to Hollis and Rutherford who gave very slightly different versions of where their

Page 12 - OPINION AND ORDER

friend Larry was. Under Neel's version of the facts, the door was closed. In response to the officers' knocking, Neel told them to go away because he was tired. The officers did not know the state of disarray inside the trailer. Based on this version of the facts, I do not think a jury could find that the officers had reasonable grounds to believe that there was an emergency at hand.

Taking defendants' version of the facts, however, the door was ajar and Neel told them to open the door. This made the opening of the door permissible which would bring into view the garbage, what appeared to be wild rats crawling on Neel, and the syringe. A jury could find at this point that the officers had reasonable grounds to believe that Neel was in immediate need of their assistance.

Since the discordant view of the facts brings me to different conclusions, I cannot determine if entry into the trailer violated the Fourth Amendment. Because I cannot make that determination, I also cannot address the qualified immunity argument at this time. Summary judgment based on the emergency exception is denied.

IV. Neel's Detention

A. Officer Resch

Resch contends there is no evidence that she personally participated in Neel's detention.

According to Neel, Resch entered his trailer and helped escort him out. There is no evidence that she was involved in the scuffle during which Neel was searched and eventually cuffed. Neel argues, however, that the arrest occurred when he was removed from his trailer. With the factual issues described above, I cannot determine if Resch took part in the detention.

B.   *Terry* Stop

Defendants argue that the conduct Neel characterizes as a detention is actually a justified *Terry* stop because the officers reasonably believed that Neel could have had a dangerous object. Defendants note that Neel had just thrown a syringe at Abrahamson and was refusing to comply with verbal commands.

An investigative stop, as first approved in *Terry*, is reasonable under the Fourth Amendment if the officer has an objective basis to reasonably conclude that criminal activity might be in progress. United States v. Mattarolo, 209 F.3d 1153, 1157 (9th Cir.), cert. denied, 531 U.S. 888 (2000). During an investigative stop, an officer may conduct a limited protective search for concealed weapons if there is reason to believe that the suspect may have a weapon. Id. at 1158.

As discussed above, the factual issues concerning what caused the officers to enter Neel's trailer make it impossible for me to determine if their entry was constitutional. An illegal entry would taint the immediate subsequent detention. Cf. United States v. Washington, 490 F.3d 765, 774 (9th Cir. 2007) (evidence seized subsequent to a Fourth Amendment violation is tainted by the illegality and is inadmissible). Moreover, I concluded above that I could not determine when the arrest occurred. A jury will have to make factual determinations before any of these issues can be resolved. Accordingly, I deny the motion for summary judgment concerning the detention.

///


///

## CONCLUSION

Defendants Officer Abrahamson, Officer Resch, Officer Besner and City of Portland's Motion for Summary Judgment (#29) is granted in part. All claims alleged against the City are dismissed. The claims alleged against the individual officers will proceed to trial.

IT IS SO ORDERED.

Dated this      27th      day of February, 2008.

                                                    /s/ Garr M. King  
                                                   Garr M. King  
                                                   United States District Judge